IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DANIEL J. WINKLES, M51316,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) |
| | ) |
| **WARDEN BARWICK,** | ) |
| **C/O WILLIAMSON,** | ) |
| **WEXFORD HEALTH SERVICES,** | )   Case No. 25-cv-1793-MAB |
| **DR. GORDON,** | ) |
| **NURSE SARAH,** | ) |
| **ILL. DEPT. OF CORR.,** | ) |
| **JOHN/JANE DOE 1,** | ) |
| **JOHN DOE 1-4,** | ) |
| **MEDICAL STAFF,** | ) |
| | ) |
| **Defendants.** | ) |

**MEMORANDUM & ORDER**

**BEATTY, Magistrate Judge:**

Plaintiff Daniel J. Winkle, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Pinckneyville Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. Specifically, Plaintiff alleges that the defendants used excessive force against him in June of 2025, and denied adequate medical care. The Complaint (Doc. 1) is now before the Court[1] for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the

---

[1] The Court has jurisdiction to resolve Plaintiff's motions and to screen his Complaint in light of his consent to the full jurisdiction of a magistrate judge and the Illinois Department of Corrections', Wexford, and Centurion's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandums of Understanding between the Illinois Department of Corrections, Wexford, Centurion and this Court.

Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### THE COMPLAINT

On the afternoon of June 2, 2025, Plaintiff experienced a seizure while in his cell. He alleges that though he was already facedown on the floor, officers entered with a riot shield and pinned him to the ground. (Doc. 1 at 7). He was handcuffed behind his back while he convulsed, and when he momentarily stopped shaking he was placed in ankle cuffs. Officers lifted him by the restraints and forced him into a wheelchair, cutting his foot in the process. Once in the wheelchair, Plaintiff began to convulse again, and according to Plaintiff, Defendant Williamson remarked that he was "going full retard." (Doc. 1 at 7). Plaintiff's feet drug on the ground as he was wheeled to the healthcare unit, causing further abrasions. (Doc. 1 at 7-8).

At the medical unit Jane Doe 1[2], nurse Sarah, asked Defendant Williamson what happened, to which Williamson responded that Plaintiff was just faking it. (Doc. 1 at 8). Defendant Sarah then indicated she would provide any treatment Plaintiff desired

---

[2] In the factual allegations, Plaintiff referred to the nurse as "Jane Doe," but in the listing of defendants he named "Nurse Sarah" as a nurse who worked the treatment room on the 3-11 shift (Doc. 1 at 2). Given that Plaintiff alleges this event transpired around 3:30pm, the Court will assume that Nurse Sarah and Jane Doe 1 are the same person. Nurse Sarah is already listed as a defendant on the electronic docket sheet, and Jane Doe 1 is not listed, so no adjustments need to be made to the electronic record.

because she did not want to be sued again. (Doc. 1 at 8). While in the healthcare area, Plaintiff's smock fell open and in the process of closing it, Defendant Williamson intentionally touched Plaintiff's genitals. Williamson and Sarah exchanged remarks about Plaintiff's genitals. Defendant Dr. Gordon saw Plaintiff and indicated he would review Plaintiff's chart for a history of seizure disorder, but Plaintiff was returned to his cell without any treatment. At the cell, Plaintiff observed lacerations on his wrists and ankles from the restraints, which he called to Williamson's attention. Rather than offer care or help, Williamson indicated that the lacerations were unavoidable because staff did not know what was wrong with Plaintiff when they applied restraints. (Doc. 1 at 8). On closer inspection, Plaintiff found bruises all over his torso, and arms. (*Id.*).

The next day Plaintiff reported the incident to an unknown mental health professional, who relayed the information to internal affairs. (Doc. 1 at 9). She allegedly relayed that internal affairs did not believe the allegations and that nothing further would be done. Plaintiff filed an emergency grievance, which was deemed not an emergency. He resubmitted the grievance, but alleges he got no response. In the weeks after the incident Defendant Williamson made comments indicating he was glad internal affairs did not believe Plaintiff's report because he was already in trouble with Springfield for force against inmates.

Plaintiff alleges that he now lives in fear of further encounters, though he does not describe any further specific issues. During the incident his right pinky and ring fingers were injured. Dr. Gordon has made referrals for an outside consultation, daily care at the prison, and physical therapy, but Plaintiff has not received any additional care. He claims

3

that his hand worsens by the day, that it is extremely swollen, and that he has lost function of the injured fingers. (Doc. 1 at 9). Dr. Gordon also allegedly referred him for chronic seizure clinic, but Plaintiff has not been seen for this sort of treatment since 2023. He alleges his family has attempted to contact medical staff and the warden, and he has written grievances and letters all to no avail. (Doc. 1 at 9).

Plaintiff seeks monetary compensation and treatment for his injuries. (Doc. 1 at 10). He also seeks the replacement of damaged or destroyed items, and future costs.

Based on the allegations in the Complaint the Court designates the following Claims:

> **Claim 1:** **Eighth Amendment excessive force claim against Defendant Williamson for the response and use of restraints on June 2, 2025, during Plaintiff's seizure;**
>
> **Claim 2:** **Eighth Amendment deliberate indifference claim against Nurse Sarah and Defendant Williamson for Plaintiff's injuries on June 2, 2025;**
>
> **Claim 3:** **Eighth Amendment deliberate indifference claim against Dr. Gordon for the care or lack thereof on June 2, 2025, and in the following months for Plaintiff's seizure condition and hand injury;**
>
> **Claim 4:** **Eighth Amendment deliberate indifference claim against Defendant Barwick for failing to ensure Plaintiff received follow-up care for his injuries after Plaintiff and his family sent grievances and letters.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without

prejudice as inadequately pled under *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

### PRELIMINARY DISMISSALS

In the case caption, Plaintiff named the Illinois Department of Corrections (IDOC) as a defendant, but he did not specifically mention the entity in his factual allegations. Naming a party without describing their role is insufficient to state a claim. *Black v. Lane*, 22 F.3d 1395, 1401 n. 8 (7th Cir. 1994) (naming a defendant without describing their actions is insufficient). Additionally, IDOC is not considered a person for purposes of §1983 liability, so it is not possible for Plaintiff to state a valid claim against this entity. *Nunez v. Ind. Dep't of Child Servs.*, 817 F.3d 1042, 1044 (7th Cir. 2016) (an agency of the state is not subject to suit under § 1983); *de Lima Silva v. Dep't of Corrections*, 917 F.3d 546, 565 (7th Cir. 2019). IDOC is dismissed for Plaintiff's failure to state a claim.

Next, Plaintiff named John Does 1-4, officers of internal affairs. Although he indicates that a mental health provider contacted internal affairs, he does not actually make any allegations against these four individuals in his factual narrative. The mere suggestion that a mental health professional reached out to an ambiguous group of employees is not sufficient to hold four individuals personally responsible for involvement with the events Plaintiff described in his complaint. Additionally, it is not clear what theory of relief he would proceed on against these individuals because there is no freestanding constitutional obligation for prison employees to investigate things reported by inmates. Plaintiff does not allege, for example, that he reported the situation,

5

it was not investigated, and he suffered future harm.  Thus, it is unclear what theory of relief he could pursue against these four and they are dismissed without prejudice.

Additionally, to the extent that Plaintiff generically lists the "medical staff" as a defendant, this is also not sufficient to establish a claim.  The allegation that 'one or more defendants harmed me' is simply not enough under § 1983, because § 1983 relies entirely on personal responsibility of individual's for their allegedly harmful conduct.  *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009).

Plaintiff named John Doe 1, a person he described as a mailroom officer, but he did not include any allegations about this individual's conduct in the factual narrative.  Therefore, John Doe 1 is dismissed without prejudice.

Finally, Plaintiff named Wexford Health Services as a defendant, but he did not say anything about Wexford in the text of his complaint.  Wexford is a corporate medical provider, so to plead a sufficient claim, Plaintiff would need to allege Wexford was responsible for a policy, custom, or practice that caused him harm.  He has not met this standard, so Wexford is dismissed without prejudice.

## Discussion

An Eighth Amendment excessive force claim requires an inquiry into "whether force was applied in a good-faith effort to maintain or restore discipline, or [whether it was] applied maliciously and sadistically to cause harm."  *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  The "core judicial inquiry" for an excessive force claim is not the severity of the injury, but whether the force used was 'malicious and sadistic.'  *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).  Plaintiff alleges that Defendant Williamson participated in restraining

6

him while he had a seizure, and that the restraints were so tight they caused lacerations. He also alleges that the way he was transported via the wheelchair, with his feet dragging on the ground, caused additional injuries, and that he sustained injuries when he was pinned to the ground in his cell. He raised the issue with Williamson, who retorted that force was necessary because staff did not know what was wrong with Plaintiff. On the face of the pleadings, the Court cannot determine if the force used was greater than necessary, or if it was used in a malicious and sadistic fashion. This claim will turn closely on the facts that emerge later in the case. But for nor now at this stage of the case, Claim 1 may proceed.

In Claim 2, Plaintiff complains that at the healthcare unit Defendant Williamson and Defendant Sarah were not sympathetic to his situation and spoke about him in a negative fashion. Although Williamson and Sarah's comments about their desire to provide care, or about Plaintiff's genitals – if true - are unprofessional, they do not rise to the level of a constitutional violation. Ultimately, Plaintiff states that he was seen by Dr. Gordon on this date, so it does not seem that Williamson or Sarah actually denied him care. Claim 2 will be dismissed as insufficient.

Claim 3 against Dr. Gordon shall proceed as pled based on Plaintiff's assertions that Gordon promised to follow-up on his seizure issues but discharged him without care, and Dr. Gordon promised care for Plaintiff's injured right pinky and ring finger, but care still has not been provided. It is possible that once Dr. Gordon saw Plaintiff and made a treatment plan, the follow-up steps were the responsibility of other staff, but for

now, the Court will allow Plaintiff to proceed on the theory that Dr. Gordon did not provide or ensure timely adequate care.

Finally, Claim 4 against Defendant Barwick, the warden, may also proceed. Plaintiff alleges that he has written grievances and letters about his situation and that his family has also contacted the warden, to no avail. An administrator who receives detailed correspondence about an inmate issue and fails to investigate may be held liable for deliberate indifference. *Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015) (an inmate's correspondence to a prison administrator may establish a basis for personal liability if the correspondence provides sufficient knowledge of a constitutional deprivation).

In sum, Claim 1 may proceed against Defendant Williamson, Claim 3 may proceed against Defendant Dr. Gordon, and Claim 4 may proceed against Defendant Barwick. One final detail is worth mention. Plaintiff states in his demand for relief that he wants compensation for lost or damaged property, but the only recourse for personal property is for an inmate to file a claim with the Illinois Court of Claims. *See Stewart v. McGinnis*, 5 F.3d 1031, 1035-37 (7th Cir. 1993) (an inmate's post-deprivation remedy for a loss of personal property lies with the Illinois Court of Claims). Therefore, Plaintiff will not be able to recover for lost property in this case.

### DISPOSITION

**Claim 1** may proceed against Defendant Williamson, **Claim 3** may proceed against Dr. Gordon, and **Claim 4** may proceed against Warden Barwick. By contrast, **Claim 2** is dismissed as insufficiently pled against Defendants Nurse Sarah and Williamson. Plaintiff has failed to state a claim against Defendants Illinois Department of Corrections,

Wexford Health Services, Nurse Sarah, John Does 1-4, John/Jane Doe 1, and medical staff, so the Clerk is **DIRECTED** to **TERMINATE** these parties.

The Clerk of Court is **DIRECTED** to prepare for Defendants Barwick, Williamson, and Dr. Gordon: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted.  See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **REMINDED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **14 days** after a transfer or other change of address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute.  See FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA Order in this case because it will involve the exchange of medical records.

**IT IS SO ORDERED.**

**DATED: November 13, 2025**

/s/ Mark A. Beatty
**MARK A. BEATTY
United States Magistrate Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.